IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

|  |  |
|---|---|
| CHARLES POULSON, | 1:22-CV-00260-RAL |
| Plaintiff | |
| vs. | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| KIM SMITH, et al., | OPINION ON DEFENDANTS' MOTION TO DISMISS |
| Defendants | ECF NO. 44 |

I.   Introduction

Plaintiff Charles Poulson, an inmate confined at the State Correctional Institution at Forest (SCI-Forest), initiated this *pro se* civil rights action seeking monetary relief pursuant to 42 U.S.C. § 1983.  In his amended complaint – the currently operative pleading – Poulson asserts that medical professionals at SCI-Forest violated his constitutional rights as secured by the Eighth and Fourteenth Amendments to the United States Constitution by failing to provide him with adequate medical care.  ECF No. 29.  As Defendants, Poulson has named three individuals employed at SCI-Forest: Nurse Leslie, a nurse practitioner; Nurse Ferdarko, a nurse supervisor; and Kim Smith, the Health Care Administrator for the prison.  *Id*. at p. 1.

Presently pending is a motion to dismiss filed by Defendants Ferdarko and Smith.[1]  ECF No. 44.  Plaintiff having filed a response, *see* ECF No. 47, this matter is ripe for adjudication.[2]

---

[1] Leslie is represented by separate counsel and has not moved to dismiss.  *See* ECF No. 49.

[2] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

II.     Factual Background

The following factual averments are accepted as true for purposes of this motion.[3]  On August 31, 2020, Poulson visited Leslie at sick call for pain in his lower back and neck.  ECF No. 29 at 2; ECF No. 11-1.  Following an examination, Leslie applied a heating pad to Poulson's lower back to treat his pain.  ECF No. 11-1.  Leslie applied the heating pad twice more the following day.  *Id*.  Later that afternoon, Poulson was changing his clothing in his cell when his cellmate noticed that his t-shirt was sticking to his back.  *Id*.  Poulson removed his t-shirt and observed that his back was severely burned and that his t-shirt was full of dried blood.  *Id*.  Poulson maintains that the heating pad was "extremely hot" but that he could not feel it burning his skin because of a medication that he was taking at the time that dulled his response to pain.  *Id*.  He notes that his back remains "raw" and believes he has been permanently scarred.  *Id*.  He accuses Leslie of using a faulty heating pad and overlooking that Poulson was taking a medication that prevented him from feeling his burns.  ECF No. 29 at 8.

Poulson filed an administrative grievance against Leslie following the incident.  *See* ECF No. 11-1.  Ferdarko, to whom it was initially assigned, observed that "[Poulson's] back appears to be burned and there is a possibility it was from a heading pad," but found "nothing indicating that medical staff were negligent."  ECF No. 11-2.  Ferdarko explained that there were no prior injuries to alert the staff that the machine was not working properly (despite it being regularly used) and that medical personnel promptly and appropriately removed it from service and provided immediate treatment for Poulson's burn.  *Id*.  Accordingly, Ferdarko "upheld

---

[3] Poulson's pleading, in addition to relying heavily on legal conclusions, is not a model of clarity.  Most critically, it does not contain a timeline or description of the incident that caused him harm.  Consequently, the Court is relying, in part, on the statement of facts set forth in Poulson's administrative grievance (attached as an exhibit to his complaint at ECF No. 11-1) for background and context.

[Poulson's grievance] in that [his] back appears to be burned and there is a possibility it was from a heading pad," but denied compensation because "there is nothing indicating that medical staff were negligent." *Id*.

Poulson appealed to the facility manager who, for reasons that are unclear, remanded Poulson's grievance for additional review and response. ECF No. 11-7. On remand, the grievance was assigned to Smith. ECF No. 11-8. After reviewing Poulson's medical records, Smith noted that he had suffered a "14 cm by 5 cm burn to the left side of the back and a 11 cm by 6 cm burn to the right side of his back." *Id*. She further noted that medical staff promptly cleansed his burns, applied non-stick dressing, treated his burns with Silvadene cream, and monitored him daily for signs of infection. *Id*. During several follow up visits, medical providers observed that Poulson's burn wounds were "healing well" and that "there was new tissue growth around each wound edge." *Id*. Poulson continued to receive regular treatment for his burns for the next several months. *Id*. Based on the foregoing, Smith upheld Poulson's grievance but declined to award compensation:

> Inmate Poulson's grievance is upheld – the heat pack treatment did cause Inmate Poulson to get burns on his back. … [However], Inmate Poulson's grievance is denied in that medical was not negligent. Had any staff known that the machine was malfunctioning the unit would have been pulled from rotation prior to any injury. Upon this investigator being notified I did pull the unit from rotation and all other hot pack treatments to other inmates were discontinued. The safety manager was notified and the appropriate accident investigation was done. Inmate Poulson was immediately referred to the practitioner when nursing staff found out about his injury and he has received appropriate care.

*Id*. at 11-9.

Poulson's claims against Ferdarko and Smith appear to be based primarily on the aforementioned grievance responses and their supervisory roles in the prison hierarchy. In his

3

pleading, he explains that Ferdarko "is a supervisor to Defendant Leslie, who caused the injury to [his] back," and that Ferdarko "failed in his duty to insure Poulson would not get injured by the heat pads that were treating his back." *Id*. at 6. He avers that Ferdarko had a general responsibility "to make sure the heating pad machine was working proper and not malfunctioning" and that Ferdarko "should have known that [Poulson] was taking medication that prevented [him] from feeling the heating pads that were treating his back." *Id*. Notably absent are any facts from which the Court might infer that Ferdarko played any role in the decision to use the heating pad (or, for that matter, even knew that Poulson had sought treatment for lower back pain on the relevant dates).

Turning to Smith, Poulson similarly alleges that she "was in a supervising position for Defendant Leslie and Defendant Ferdarko" and "failed in her duty to properly train Defendant Ferdarko and Defendant Leslie in regards to maintaining adequate medical equipment (heating pad machine)." *Id*. at 3. He suggests that Smith "has demonstrated a pattern of not providing adequate medical care to patients such as [Poulson], and she demonstrated that she does not check or maintain adequate care for the medical equipment such as the heating pad machine that scarred [Poulson's] back for life." *Id*. Poulson further states that Smith "knew or should have known that she should have informed her staff (Defendant Leslie, and Defendant Ferdarko) that Plaintiff Poulson was taking medication that would prevent him from feeling the heating pads heat on his back." *Id*. at 5. As with Ferdarko, Poulson has not pled any facts suggesting that Smith played a direct, active role in the medical treatment that caused his injury.[4]

---

[4] Nor could she have. It is well-established that a Corrections Health Care Administrator is not a medical provider. *See, e.g., Whitehead v. Thomas*, 2017 WL 2664490, at *7 (W.D. Pa. May 23, 2017) ("Courts in the Third Circuit have recognized that CHCAs are 'undisputably administrators, not doctors'") (quoting *Thomas v. Dragovich*, 142 Fed. Appx. 33, 39 (3d Cir. 2005)).

III.     Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir.

2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Plaintiff is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV.   Analysis

Relying on the factual averments outlined above, Poulson primarily asserts an Eighth Amendment claim for deliberate indifference against each Defendant. He also references the

6

Fourteenth Amendment, although he does not explain (and it is not immediately clear) how that amendment might apply to the conduct alleged. ECF No. 29 at 2. In response, the moving Defendants argue that Poulson has neither alleged any facts demonstrating their personal involvement in the alleged misconduct nor properly exhausted his administrative remedies. Each defense will be addressed in turn.

    1.    Personal involvement

To prevail on a § 1983 claim, a plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See*, *e.g.*, *Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

These principles apply with equal force where the defendants are supervising prison officials. *See*, *e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[L]iability cannot be predicated solely on the operation of respondeat superior."). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to

supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Rather, a supervisor-defendant may only be liable for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm; or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Apropos to the instant case, it is also "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin*, 951 F.Supp.2d at 782. *See also Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). As such, courts have routinely dismissed civil rights claims against prison officials, including health care administrators, whose only knowledge of the alleged violation stemmed from their participation in the grievance process. *See, e.g., Stevens v. Winger*, 2021 WL 2075585, at *4 (W.D. Pa. May 24, 2021) (dismissing claims against prison health care administrator whose only awareness of the alleged misconduct was based on receipt of a grievance); *Brown v. Nicholson*, 2020 WL 610523, at *6 (E.D. Pa. Feb. 7, 2020) (dismissing claim against prison CHCA who "denied [plaintiff's] grievance [and] stat[ed] that he had received appropriate medical attention for his reported complaint"); *Rogers v. United States*, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating

8

and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.").

In the instant case, the only factual allegations regarding the moving Defendants are that each of them "was in a supervising position for Defendant Leslie," knew or should have known of Poulson's medical history and was generally aware of the need to properly maintain medical equipment. There is nothing to suggest that Ferdarko or Smith played any direct role in the events surrounding Poulson's injury beyond responding to his administrative grievance days or weeks later. As such, it is abundantly clear that Poulson is attempting to hold these Defendants responsible for the unconstitutional action of other individuals based entirely upon their supervisory role in the prison system. This type of averment is insufficient to establish personal involvement in the deprivation of a constitutional right. *Mincy*, 508 Fed. Appx. at 104. *See also*, *e.g.*, *Trainor v. Wellpath*, 2021 WL 3913970, at *9-11 (W.D. Pa. Sept. 1, 2021) (dismissing CHCA Smith at motion to dismiss stage when her only alleged involvement in the underlying misconduct stemmed from the grievance process); *Stevens*, 2021 WL 2075585, at *4 (same); *Carson v. Wetzel*, 2019 WL 7283283, at *8 (W.D. Pa. Dec. 27, 2019) (same). Accordingly, the moving Defendants are entitled to dismissal.

    2.    Exhaustion

Alternatively, Defendants argue that Poulson failed to properly exhaust his administrative remedies as to anyone but Leslie. The Court agrees.

It is axiomatic that the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the "PLRA"), requires a prisoner to exhaust any available administrative remedies before he may bring an action pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims relating to prison life that

do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Failure to exhaust administrative remedies under the PLRA is an affirmative defense that a defendant must plead and prove. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The grievance system utilized in Pennsylvania's prison system requires inmates to satisfy a three-step grievance and appeals process. *See* Grievance System Policy DC ADM-804; *Smith v. Sec. of Pa. Dept. of Corrections*, 2018 WL 279363, at *2 (W.D. Pa. Jan. 3, 2018). First, the inmate must "legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to 'initial review.'" *Smith*, 2018 WL 279363, at *2 (citing *Spruill v. Gillis*, 372 F.3d 218, 233 (3d Cir. 2004)). Second, the initial review must be appealed to the Facility Administrator for a second level of review. *Id*. Finally, "the inmate is required to file an appeal to the Secretary's Office of Inmate Grievances and Appeals ("the Secretary's Office")." *Id*. All three stages of review must be completed before a grievance is deemed administratively exhausted for purposes of the PLRA.

Apropos to the instant case, however, DC-ADM 804 contains an additional requirement: that the inmate's grievance must "identify individuals directly involved in the event(s)." *Seldon v. Wetzel*, 2021 WL 2877811, at *5 (W.D. Pa. May 13, 2021). *See also Chaney v. Bednard*, 2020 WL 7864202, at *5 (W.D. Pa. Dec. 31, 2020) (noting that the DOC's grievance policy requires an inmate to identify the offending individuals targeted in the grievance); Spruill, 372 F.3d at 234 (characterizing the identification requirement as "mandatory"). Courts characterize the satisfaction of this requirement as "proper exhaustion." *Smith*, 2018 WL 279363, at *3 (noting that a grievance must be fully exhausted to final review and "properly exhausted"). Moreover, because the identification requirement is mandatory, "a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative

remedies under the PLRA." *Williams v. Pa. Dep't of Corr.*, 146 Fed. Appx. 554, 557 (3d Cir. 2005). When the inmate's failure is clearly apparent from the complaint and attached exhibits, dismissal is appropriate. *Stone v. Johnson*, 713 Fed. Appx. 103, 105-106 (3d Cir. 2017) (affirming district court's grant of motion to dismiss after concluding that the grievance attached to plaintiff's complaint "did not specifically reference any of the . . . conduct complained of in the complaint.").

A review of the pertinent grievances attached to Poulson's complaint reveals that he never identified Ferdarko or Smith in any of his filings.[5] ECF No. 11-1. Because he did not satisfy this mandatory procedural requirement, he cannot seek relief against those Defendants in this action. Dismissal is appropriate.

V.  Conclusion

For the reasons stated herein, Defendants' motion to dismiss is granted. The Clerk will be directed to terminate Ferdarko and Smith from this action, with prejudice. An appropriate order will follow.

RICHARD A. LANZILLO
Chief United States Magistrate Judge

Dated:  December 8, 2023

---

[5] In deciding a motion to dismiss, the Court properly considers documents attached to Complaint. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)

11